IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17CV109-GCM

| | |
|---|---|
| JEFFREY MCKEOWN, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>TECTRAN MFG., INC., )<br>)<br>Defendant. )<br>_____ ) | ORDER |

This matter is before the Court upon the Defendant's Motion to Dismiss the Amended Complaint. The motion is fully briefed and ripe for consideration by the Court.

I. **FACTUAL BACKGROUND**

The Amended Complaint alleges as follows: Since 2009, Plaintiff has worked in North Carolina as Director of OEM and Fleet for Tectran Mfg., Inc. ("Tectran"), a Delaware corporation with its principal place of business in New York. (Amd. Compl. ¶¶ 3-5). Tectran is a distributor and assembler of heavy duty truck and trailer components in the North America market. (*Id*. at ¶ 17). In 2009, Tectran President Bruce McKie contacted Plaintiff, a veteran of the heavy-duty truck and trailer component industry, and offered an ownership stake in Tectran. (*Id*. at ¶¶ 15, 19). Following negotiations, Plaintiff agreed to join Defendant to develop Tectran's OEM (original equipment manufacturer) business as employee and shareholder. (*Id*. at ¶ 19). Plaintiff alleges that throughout his employment, Tectran repeatedly failed to transfer Tectran stock to Plaintiff according to the parties' agreement. (*Id*. at ¶ 26). Plaintiff began to report motor vehicle component safety issues to Tectran's President and corporate counsel. (*Id*. at ¶ 42). Plaintiff also became concerned about Tectran's disregard for safety, falsified reports,

1

misrepresentation of company financials, and "cookie jar accounting." (*Id*. at ¶¶ 29 – 43). Concerned about his reputation in the industry, Plaintiff resigned his employment on February 24, 2017. (*Id*. at ¶ 44). Plaintiff remained a Tectran shareholder following his resignation as an employee. (*Id*. at ¶ 50).

After his resignation, Plaintiff began employment with Phillips Industries, Inc., an alleged competitor of Tectran. (*See* Doc. No. 21 at ¶ 2). Plaintiff alleges that Tectran failed to pay employment-related compensation, including but not limited to unpaid stock options, $8239.53 for unpaid vacation pay, approximately $16,000 for Plaintiff's unpaid quarterly bonus, and approximately $25,000 for Plaintiff's unpaid management bonus. (Amd. Compl. at ¶ 56). Moreover, Tectran wrongly attempted to repurchase Plaintiff's 600 shares of stock by claiming that it could repurchase the stock at $71.45 per share (the original price Plaintiff paid for the stock), significantly less than market value. (*Id*. at ¶¶ 58, 60, 80). Plaintiff returned the check to the Defendant and has disputed the validity of any purported closing involving Plaintiff's shares. (*Id*. at ¶¶ 61-62). Tectran's attempt to repurchase Plaintiff's stock was pursuant to its Stock Option Award Agreement ("Award Agreement"),[1] which provides as follows:

> 8. Repurchase Rights.
> (a) In the event of your termination of employment *by the Company* and/or any Parent or Subsidiary, the Company shall have the option, but not the obligation, to repurchase all or any part of the Shares issued pursuant to this Agreement . . ..
> The following provisions shall apply to a repurchase under this Section 8(a):
> (i) The per share repurchase price of the Shares to be sold to the Company upon exercise of its option under this Section 8(a) shall be equal to the Fair Market Value of each such Share determined in accordance with the Plan as of the date of termination, death or Disability; <u>provided</u>, <u>however</u>, that if you are terminated for Cause or you "Compete with the Company" during the one year period following your date of termination, the per share repurchase price shall be equal to the lesser of (x) the Exercise Price of each Share or (y) the Fair Market Value of each such Share determined in accordance with the Plan as of the date of termination.

---

[1] The Award Agreement is attached to the Amended Complaint as Doc. No. 15-1.

Plaintiff has filed this lawsuit alleging claims for Declaratory Judgment, violation of the North Carolina Wage and Hour Act, violation of the Delaware Wage Payment and Collection Act, Breach of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing. Defendant has moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

**DISCUSSION**

**A. Standard for Rule 12(b)(6) Motion**

To avoid dismissal, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to show that the claim is "plausible on its face." *Bell Atl. Corp.v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" – a standard that requires more than facts "that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. 662, 678. A court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation and internal quotation marks omitted).

**B. Declaratory Judgement**

Defendant seeks to dismiss Plaintiff's Declaratory Judgment claim, arguing that it is duplicative of his breach of contract claim. Plaintiff seeks a "declaration identifying Mr. McKeown's status and associated rights as an active Tectran shareholder." (Amd.

Compl. ¶ 82). A genuine dispute exists over the status of Mr. McKeown's 600 Tectran shares. Tectran claims that it is entitled to repurchase the shares for the price Plaintiff originally paid for them, and Plaintiff contends that Tectran is not entitled to any such repurchase. This is precisely the type of situation the Declaratory Judgment Act is designed to address.

Moreover, Plaintiff's Declaratory Judgment Claim is not duplicative of his breach of contract claim. The breach of contract claim alleges that Tectran breached its contract with Plaintiff by failing to pay Plaintiff certain compensation, including but not limited to wages, bonuses, vacation pay, and grants of stock ownership. (*Id*. at ¶¶ 102, 111). The Court finds that Plaintiff's Declaratory Judgment cause of action states a claim.

### C. Delaware Wage Payment and Collection Act

Under the Delaware Wage Payment and Collection Act, an "employee" is defined as "any person suffered or permitted to work by an employer under a contract of employment either made in Delaware or to be performed wholly or partly therein." Del. Code Ann. tit. 19, § 1101. Defendant argues that Plaintiff does not allege facts to show that he was an employee as defined by the Delaware Act so as to warrant the application of Delaware law. However, the Amended Complaint asserts that "the contract for employment was either made in Delaware or was to be performed partly therein." (Amd. Compl. ¶ 95). At this point in the litigation, Plaintiff's allegation is sufficient to withstand Tectran's Motion to Dismiss.

### D. North Carolina Wage and Hour Act

Defendant seeks to dismiss this claim to the extent Plaintiff alleges that Tectran wrongfully withheld Tectran shares as "unpaid wages." Aside from any allegations as to

4

wrongfully withheld shares of stock, Plaintiff alleges that he is owed for unpaid vacation pay, an unpaid quarterly bonus, and unpaid management bonus. (*Id*. at ¶ 89). At this stage of the litigation, the Court will allow his claim under the North Carolina Wage and Hour Act to remain. Any issues Defendant raises as to whether or not the promises Tectran allegedly made for additional stock were oral or written are more appropriately raised in a motion for summary judgment. Plaintiff alleges that "Defendant is in possession of documentation which evidences the agreement of the parties concerning compensation." (*Id*. at ¶ 114). Defendant's arguments may certainly be raised again, if appropriate, after discovery occurs.

### E.  Breach of Contract

Defendant argues that to the extent that Plaintiff's breach of contract claim is based on promises Defendant allegedly made to him to induce him to accept employment in 2009, or promises to provide stock options that were not delivered when he purchased his shares in 2012, such claims are time-barred under both Delaware and North Carolina law. This is likewise a question for another day. The Amended Complaint's allegations establish that "Defendant wrongfully refuses to remit compensation owed to Plaintiff for his services to Tectran" including $8,239.53 for unpaid vacation pay, approximately $16,000.00 for Plaintiff's unpaid quarterly bonus, approximately $25,000.00 for Plaintiff's unpaid management bonus, and grants of stock ownership (*Id*. at ¶¶ 71 and 111). Additionally, Defendant allegedly failed to properly administer the 600 Tectran shares. Furthermore, "Defendant failed to provide full compensation owed to Plaintiff by conducting improper financial practices which undervalued Plaintiff's bonus computations and associated distributions." (*Id*. at ¶ 112).

While Defendant's argument interprets the allegations of the alleged contractual breaches as concerning an isolated period in 2009, the Amended Complaint alleges that: "*Throughout* the employment relationship, Tectran repeatedly failed to transfer Tectran stock to Plaintiff, in accord with the parties' agreement." (*Id*. at ¶ 26) (emphasis added). Regardless, the Amended Complaint alleges additional unpaid compensation owed to Plaintiff including additional bonuses owed as a result of Tectran's alleged illicit accounting practices. Plaintiff also claims employment compensation which Tectran improperly withheld following Mr. McKeown's 2017 resignation (e.g., unpaid bonuses and vacation pay). The Court finds that the Amended Complaint properly alleges a breach of contract claim. Discovery may or may not reveal that certain of Plaintiff's breach of contract allegations are time-barred, however, the Court will no doubt have an opportunity to address this issue at the proper time.

**F. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Under Delaware law,[2] the implied covenant of good faith and fair dealing requires a party to a contract to "refrain from arbitrary or unreasonable actions which prevent the other party from receiving the fruits of the bargain." *Dunlap v. State Farm Fire & Cas. Co*., 878 A.2d 434, 441 (Del. 2005) ("The covenant is 'best understood as a way of implying terms in the agreement,' whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions."). Parties breach the implied covenant when their conduct frustrates the ultimate purpose of the contract by taking advantage of their position to control implementation of the contract's terms. *Id*.

---

[2] The Award Agreement specifically provides that its terms are governed by Delaware law such that application of Delaware law is appropriate.

The Amended Complaint alleges a scheme whereby Defendant offered Plaintiff compensation at the beginning of employment, then repeatedly withheld the promised compensation (e.g., Tectran shares, management bonuses, vacation pay, etc.), and undervalued actual distributions by way of improper financial practices.[3] (Am. Comp. ¶¶ 19-26 and 122). With regard to Mr. McKeown's 600 Tectran shares, by signing a shareholder agreement, a majority shareholder agrees "to not use oppressive or underhanded tactics which would prevent [the minority shareholder] from receiving the fruits of the Shareholders Agreement." *Mick v. Total Control Pest Mgmt.*, C.A. No. 11C-03-246-JRJ, 2011 WL 2937254, *2 (Del. Super. Ct. July 20, 2011) (denying a motion to dismiss for an implied covenant claim where the majority shareholder withheld access to stock certificates and corporate documents, and failed to transfer shares in accordance with the parties' agreement). The Amended Complaint alleges Tectran violated the nature of the parties' stock agreement by engaging in heavy handed tactics which first withheld stock certificates and corporate documents from Plaintiff and then attempted an unauthorized repurchase of Plaintiff's 600 Tectran shares. The Court finds that Plaintiff adequately states a claim for breach of the implied covenant of good faith and fair dealing.

### G. Punitive Damages

Plaintiff alleges that he is entitled to punitive damages under N.C. Gen. Stat. §1D-15(a), which allows punitive damages in addition to compensatory damages if an aggravating factor is present, such as fraud, malice, or willful or wanton conduct.

---

[3] The Court has already addressed Defendant's argument that Plaintiff has failed to allege an employment contract under Delaware law.

However, subsection (d) provides that "Punitive damages shall not be awarded against a person solely for breach of contract."

Defendant correctly points out that none of the causes of action stated by the Plaintiff, even if successful, would entitle Plaintiff to an award of punitive damages. For Plaintiff's claims asserted under the North Carolina Wage and Hour Act and the Delaware Wage Payment Act, Plaintiff may only seek recovery of liquidated, not punitive damages. *See* N.C. Gen. Stat. § 95-25.22 (authorizing liquidated damages for a violation of the Act, but not authorizing recovery of punitive damages); Del. Code 19, § 1113. Nor are punitive damages available for breach of the implied covenant of good faith and fair dealing. *See E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996) (stating that mere bad faith on part of party to a contract does not give rise to punitive damages). Accordingly, Plaintiff's request for punitive damages fails as a matter of law.

**H. Stock Repurchase**

Lastly, Defendant contends that each of Plaintiff's claims related to Tectran's repurchase of stock must be dismissed because Tectran was entitled to repurchase the shares at the original purchase price pursuant to Section 8 of the Award Agreement. Defendant contends that the word "termination" in that section is defined in the 2007 Equity Incentive Plan which was incorporated into the Award Agreement that Plaintiff filed with the Amended Complaint. *See* Doc. No. 15-1 at p. 1 (stating that "the terms defined in the Company's 2007 Equity Incentive Plan (the "Plan") shall have the same

defined meanings in this Award Agreement").[4] Under the Plan, the words "termination" or "terminated" are defined to mean that a:

> Participant has for any reason ceased to provide services as an employee, officer, director, consultant, independent contractor or advisor to the Company or a Parent or Subsidiary of the Company.

(Doc. No. 9-1, p. 19). Defendant contends that a voluntary resignation clearly constitutes "any reason" for the cessation of employment, and thus Plaintiff's voluntary resignation constituted a termination for purposes of Section 8(a) of the Award Agreement, thus enabling Tectran to elect to repurchase his shares.[5] Moreover, as Plaintiff immediately began to work for a competitor after his resignation, Section 8(a)(i) allows Tectran to repurchase Plaintiff's shares at the lesser of fair market value or the original exercise price.

Plaintiff points out that Defendant's interpretation of Section 8 of the Award Agreement ignores the plain meaning of the phrase "by the company" after the phrase "termination of employment." The critical point in this analysis is the use of the word "by" in describing the termination. The word "by" distinguishes this type of termination from any other. The word "termination" is not accentuated, highlighted or in any other means set out as having any meaning other than its plain meaning. Plaintiff resigned his employment and was not terminated "by the Company."

The Court finds that at the minimum Plaintiff states a plausible claim that the repurchase provisions of Section 8 were not activated. Accordingly, Defendant's Motion

---

[4] The Court can properly consider documents attached to the Complaint, incorporated into the Complaint or that are incorporated by reference when considering a motion to dismiss under Rule 12(b)(6). *In re FAC Realty Sec. Litig.*, 990 F. Supp. 416, 420 (E.D. N.C. 1997). As the Award and Notice of Stock Award produced by Plaintiff both incorporate the Plan, its terms must be read collectively when considering whether Plaintiff has stated a proper claim for relief.

[5] In support of its argument, Defendant cites a 1969 case from Utah and a 1984 case from the Fifth Circuit, neither of which are binding authority herein.

to Dismiss any claims that Defendant wrongfully attempted to repurchase Tectran shares from Plaintiff is denied.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby DENIED, except as to Plaintiff's request for punitive damages.

Signed: March 22, 2018

Graham C. Mullen
United States District Judge