# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | |
|---|---|
| JEFFREY MCKEOWN, <br><br> Plaintiff, <br><br> v. <br><br> TECTRAN MFG., INC. <br><br> Defendant. | Civil Action No. 5:17-cv-00109 <br><br> **ORDER** |

This matter is before the Court upon the Plaintiff's Motion to Dismiss the Defendant's Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendant has filed a Response in opposition. The Plaintiff has informed the Court that he will not be filing a Reply.

**FACTUAL BACKGROUND**

The factual background of this case has been stated in the Court's Order of March 22, 2018 denying Defendant's Motion to Dismiss. (Doc. No. 35). Therefore, in this Order the Court will focus exclusively on the factual allegations contained in the Defendant's Counterclaims. The Defendant has filed Counterclaims for violations of the North Carolina Computer Trespass Act, Interference with Personal Property, Conversion, and a Permanent Injunction.

Tectran's Counterclaims allege as follows: Following McKeown's resignation, he represented to Tectran that he was returning his "laptop and Tectran property." (Doc. No. 37 at ¶ 15.) Rather than returning all Tectran property in his possession as McKeown claimed, McKeown returned a computer that was devoid of any substantive business information. *Id*. at ¶ 17. Tectran alleges that Plaintiff purposefully wiped and destroyed Tectran's business

1

information and documents. *Id*. at ¶ 18. When McKeown was contacted about the lack of files on his computer, he represented that his wife had accidentally deleted Tectran's files and also that he had no other Tectran documents in his possession. *Id.* at ¶¶ 20, 21. At all times, Tectran was the owner of the computer as well as any other Tectran documents in McKeown's possession. *Id*. at ¶¶ 14, 46, 49. McKeown did not have the right or permission to delete documents from Tectran's computer or to retain Tectran documents and information following his resignation. *Id*. at ¶¶ 41, 50, 53. Tectran subsequently learned that McKeown did have other Tectran documents in his possession and the timing of McKeown's actions following his resignation suggest that McKeown's claim his wife "accidentally" deleted files was false. *Id*. at ¶ 20. On February 27, 2017 -- after McKeown's resignation, but prior to placing the computer in the mail to return it to Tectran -- McKeown uploaded hundreds of Tectran files to an external thumb drive. *Id.* at ¶ 30. If McKeown's wife only accidentally (and innocently) deleted files from the computer, McKeown could and should have told Tectran that he had copies of the "accidentally" deleted files in an alternative location. McKeown did not do so. The documents uploaded to the thumb drive on February 27, 2017 were not the only Tectran documents in McKeown's possession. *Id.* at ¶ 31. McKeown maintained Tectran documents and information in at least one other location aside from the thumb drive. *Id*. Forensic analysis of the thumb drive shows that Tectran documents were uploaded on April 2, 2017, May 7, 2017, and May 8, 2017. *Id*. These upload dates occurred after the computer had been returned to Tectran. *Id*. These upload dates mean that McKeown uploaded Tectran documents to the thumb drive on April 2, 2017, a mere two days before McKeown began employment with Phillips Industries, Inc., a direct competitor of Tectran, and more than sixty days before McKeown filed his lawsuit against Tectran. *Id*. at ¶¶ 6, 24, 31.

McKeown admits that he retained Tectran's documents but claims that he only kept them "should legal proceedings arise." (Mem. in Supp. Mot. to Dismiss Counterclaim, Doc. No. 23 at p. 2.) Further, as alleged in the Counterclaim, the timing of McKeown's uploads to the thumb drive coupled with the fact McKeown visited Tectran customers on behalf of Phillips and has spoken poorly about Tectran to at least one of those customers, suggests McKeown had an improper motive, i.e., to compete against Tectran, for retaining Tectran documents and information. (Doc. No. 37 at ¶¶ 32-34).

McKeown argues that Tectran did not receive the return of its documents and information because it failed to request their return. However, in its Counterclaim, Tectran alleges that it requested the return of its documents and information on multiple occasions. *Id*. at ¶¶ 20, 26-27. First, after evaluating the computer and finding such an unusual lack of information, Tectran contacted McKeown about the whereabouts of the contents that should have been on his wiped computer. *Id*. at ¶ 20. At that point, Tectran was told that McKeown's wife had accidentally deleted everything, but also that McKeown was not in possession of Tectran documents. *Id*. at ¶¶ 20, 21. Tectran again requested the return of its documents on April 28, 2017 when its counsel formally demanded that McKeown return all Tectran's documents and information. *Id*. at ¶¶ 26-27. McKeown returned some documents on May 16, 2017, *Id*. at ¶ 28, however he has now admitted that he again failed to return all Tectran documents and information in his possession. *See* Consent Preliminary Injunction, Doc. No. 21 at ¶ 3 (stating that the prior "post-resignation submittals" failed to include certain Tectran information). Thus, Tectran alleges, as of at least September 2017, McKeown continued to be in possession of Tectran's documents and information despite the demand for their return and twice having claimed to no longer be in possession of Tectran documents or information.

## DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the non-moving party's claim. Under Federal Rule of Civil Procedure 8(a)(2), a complaint (or counterclaim) must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but demands more than an "unadorned, the- Defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the non-moving party must allege sufficient facts "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility when the [non-moving party] pleads factual content that allows the court to draw reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id*. at 556.

### B. The North Carolina Computer Trespass Act

The North Carolina Computer Trespass Act provides that it is "unlawful for any person to use a computer or computer network without authority and with the intent to … (1) temporarily or permanently remove, halt or otherwise disable any computer data…from a computer; [to] (3) alter or erase any computer data, computer programs, or computer software; [or to] (5) make or cause to be made an unauthorized copy, in any form…of computer data…" N.C. Gen. Stat. § 14-458. The Act goes on to define the phrase "without authority" to mean that a person "has no right

or permission to use a computer, or the person uses a computer in a manner exceeding the right or permission." *Id*. at § 14-458(a). The statute provides for a private right of action by "[a]ny person whose property or person is injured by reason of a violation of this section...." *Id*. at § 14–458(b).

In support of Tectran's claim against McKeown for violation of the Act, Tectran has alleged that following McKeown's resignation, but prior to returning his Tectran-issued laptop, McKeown uploaded Tectran documents and information to a thumb drive and then proceeded to delete those same files from his Tectran computer. (Doc. No. 37 at ¶ 30.) In deleting those documents, McKeown deprived Tectran of the possession and use of its documents. *Id*. at ¶ 54. Further, Tectran has specifically pled that McKeown's actions were done intentionally and without the right or authority of Tectran, the rightful owner of the documents. *Id*. at ¶¶ 18, 39-42. These factual allegations are sufficient to state a claim for violation of the NCCTA.

McKeown argues that Tectran failed to plead the requisite intent. However, the Counterclaim specifically alleges that McKeown's actions were intentional. *See id*. at ¶ 18 (stating that "upon information and belief, Plaintiff purposefully wiped and destroyed Tectran's business information and documents"); *Id*. at ¶ 53 (stating that "Plaintiff wrongfully and purposefully deleted files belonging to Tectran from his Computer prior to returning the Computer to Tectran following his resignation"). Tectran alleges that McKeown lied when he told Tectran he was no longer in possession of Tectran documents or information and that his wife had "accidentally" deleted the contents of the computer. *Id.* at ¶ 20. Tectran also pled that McKeown stole Tectran documents and information. *Id*. at ¶¶ 21-22, 65. These factual allegations allege the intent needed to state a violation of the NCCTA. *See Spirax Sarco, Inc. v. SSI Eng'g, Inc*., 122 F.Supp.3d 408, 417-18 (E.D. N.C. 2015).

### C. Interference with Personal Property

Under North Carolina General Statutes § 99A-1:

> when personal property is wrongfully taken and carried away from the owner or person in lawful possession of such property without his consent and with the intent to permanently deprive him of the use, possession and enjoyment of said property, a right of action arises for recovery of actual and punitive damages from any person who has or has had, possession of said property knowing the property to be stolen.

N.C. Gen. Stat. § 99A-1.

Tectran has alleged that it was the owner of the documents and information on McKeown's computer. (Doc. No. 37 at ¶¶ 14, 46, 49). Tectran has also pled that McKeown intended to, and in fact did, permanently deprive Tectran of its use, possession and enjoyment of its personal property. *Id*. at ¶¶ 60, 63. Tectran offered specific facts in support of its contention that McKeown's actions were intentional, including the timing of McKeown's deletion of files from the computer and his transfer of files to a thumb drive. *Id*. at ¶¶ 18, 30. Additionally, Tectran alleged that McKeown's explanation that his wife accidentally deleted the contents of the computer was not truthful. *Id*. at ¶ 20. Tectran supported that belief with facts alleging that McKeown misrepresented to Tectran that he was no longer in possession of Tectran documents. *Id*. at ¶ 21. McKeown has admitted to intentionally retaining Tectran documents. *See* Doc. No. 23 at p. 2. Finally, Tectran has also alleged that McKeown knew the property at issue was stolen where Tectran alleges specifically that McKeown "was the one who had taken it." *Id*. at ¶ 65. These factual allegations state each of the prima facie elements set forth in § 99A-1, and satisfy Tectran's pleading obligations under *Iqbal* and *Twombley*.

### D. Conversion

McKeown contends that Tectran has failed to state a claim for conversion because it has not alleged facts suggesting an "unqualified refusal to surrender" by McKeown. (Doc. No. 23 at p. 10). The Counterclaim alleges that McKeown misrepresented that he was not in possession of any Tectran documents. (Doc. No. 37 at ¶ 21.) A party cannot "refuse to surrender" that which he does even admit to possessing, and by claiming he possessed no Tectran documents, McKeown was refusing to return those in his possession. Misrepresentations by McKeown that he had not retained any Tectran documents or information is sufficient to satisfy any demand and refusal requirement necessary to state a claim for conversion.

Tectran alleges that McKeown misrepresented being in possession of Tectran documents on at least two occasions. The first misrepresentation occurred when McKeown denied having Tectran documents when Tectran contacted him about the lack of information on his computer. *Id*. Thereafter, on April 28, 2017, Tectran did make a demand for the return of all of its documents or property. *Id*. at ¶ 27. While McKeown returned some documents, he yet again failed to return all Tectran documents in his possession. *See* Injunction, Doc. No. 21 at ¶ 3 (stating that the prior "post-resignation submittals" failed to include certain Tectran information). Tectran has alleged facts in support of its conversion claim and, construing those facts in favor of Tectran, it has stated a plausible claim upon which relief can be granted.

### E. Permanent Injunction

McKeown argues that in light of the Consent Preliminary Injunction entered on September 20, 2017 and accompanying protective order, there is no longer a need for a permanent injunction. The Court finds McKeown's argument without merit. On a motion to dismiss, the

Court is required to accept as true the allegations in the pleadings; in this case, that requires accepting the allegations in Tectran's Counterclaim as true. *See Iqbal*, 556 U.S. at 678. In applying the proper standard of review, the Court finds that McKeown's request for dismissal is premature. At this juncture, the question is only whether sufficient facts have been alleged that would state a plausible claim for relief.

Based upon the foregoing,

IT IS THEREFORE ORDERED that the Motion to Dismiss Counterclaims (Doc. No. 22) is hereby DENIED.

Signed: May 14, 2018

Graham C. Mullen
United States District Judge